In the Matter of THOMAS B. WALKER, Petitioner, against JAMES S. WATSON et al., Constituting the Municipal Civil Service Commission of the City of New York, Respondents.

Supreme Court, Special Term, New York County, January 2, 1952.

*Harold Riegelman, H. H. Nordlinger* and *Eli M. Katz* for petitioner.

*Denis M. Hurley, Corporation Counsel (Arthur J. Goldsmith* of counsel), for respondents.

WALTER, J.  A taxpayer, who is also a member of Citizens Budget Commission, Inc., here seeks an order requiring the municipal civil service commission of the City of New York to afford him opportunity to inspect all books, accounts and papers in its office which set forth the names, positions and qualifications of occupants of exempt positions in the city government, to search the files in its office which set forth such names, positions and qualifications, and to furnish him a certified transcript thereof.

Section 894 of the New York City Charter provides that all books, accounts and papers in the office of any city department (with exceptions not here material) shall be open to the inspection of any taxpayer, and if inspection be refused the taxpayer may apply to any justice of the Supreme Court for an order that he be allowed to make such inspection.

Section 66 of the Public Officers Law provides that a person having the custody of the records or other papers in a public office within the State must diligently search the files, papers, records and dockets in his office, and either make and certify to the correctness of one or more transcripts therefrom, or certify that a document or paper of which the custody legally belongs to him cannot be found.

Petitioner accordingly contends that he has an absolute statutory right to the relief he seeks.

Respondent contends that it is not a " city department " and that the papers sought are not " public records "; and that those statutory provisions consequently are not applicable.  But if I should conclude that what petitioner seeks is reasonable and proper and in the public interest and not prohibited by law, I think there can be no doubt of my power and duty to grant the relief requested, even if petitioner does not have specific and absolute statutory right thereto.  (See *Matter of Egan* v. *Board of Water Supply,* 148 App. Div. 177, affd. 205 N. Y. 144, and *Matter of Zuppa* v. *Malthie,* 190 Misc. 778.)

I consequently address myself to those broader aspects of the matter, rather than to the somewhat technical questions whether respondent is or is not a " city department ", within the meaning of section 894 of the City Charter, and whether the papers sought are " public records " in a strictly legal sense.

The papers before me are disappointingly lacking in precise information as to how statements of the qualifications of persons appointed to exempt positions come into being.  It does not appear, for example, whether the appointing authority causes such statements to be made and filed, or whether the applicant

for appointment submits a statement of his qualifications, or whether such statements are prepared by some third persons, or whether the statements come into existence as a result of efforts of both the appointer and the appointed, or of the efforts of those two plus the efforts of third persons, possibly persons who have sponsored the appointee and urged his or her appointment.

But, however they come into existence, it seems to me wise and proper that whatever statements of the qualifications of occupants of exempt positions repose in respondents' office should be made available to taxpayers, and if there be no such statements that fact also should be disclosed to taxpayers. In fact, the lack in the papers which I have mentioned and the inability of counsel to answer some of the questions I put on the oral argument are in themselves demonstration of the need for the information which petitioner seeks.

Exempt positions are those for which there is no requirement that the person appointed thereto shall have passed a civil service examination. Appointments thereto consequently rest on the discretion of the officer who by law is vested with the power of appointment, and that officer determines the qualifications requisite for the position and what person possesses those qualifications. If that officer appoints only the well-qualified the government of the city is likely to be good. If he appoints persons not qualified, the quality of government is bound to deteriorate. And human nature being what it is, it is reasonable to believe that public disclosure of the qualifications of those appointed will tend to promote the appointment of only the well-qualified, for freedom to appoint the unqualified without the hazard of public disclosure of the deficiencies of those appointed is apt to lessen insistence upon good qualifications as a condition of appointment and invite appointment for reasons other than the fitness of the appointee for his post.

Public disclosure of the qualifications of those appointed, or of their lack of qualifications, is also apt to disclose the identity of those having the ear of the appointing power, those to whom the appointing officer turns for advice and counsel as to whom he should appoint, those who thus, although not officially connected with the city government, nevertheless exercise an important influence in the actual conduct of its affairs.

The statute which is now section 894 of the City Charter was passed for the purpose of preventing corruption and mismanagement in the city government, and its underlying theory is

that publicity is a preventative or cure for such evils (see *Matter of Egan* v. *Board of Water Supply,* 148 App. Div. 177, 180, affd. 205 N. Y. 144, *supra*); and even if respondent be right in its contention that the present section is so worded that by reason of changes in the structure of the city government it does not literally apply to respondent, I do not think that is any reason for not applying the statute in a way which I think is clearly within its spirit, purpose and intent.

It of course is easy to see that if every taxpayer were to attempt to exercise his right of inspection at frequent intervals, respondent might be so busy according such right that it would have no time to perform the civil service duties for which it was created. But an overactive interest in the affairs of government on the part of an overly large percentage of the citizenry has not yet been discovered as an evil of democracy: the attempt still is to excite sufficient interest on the part of enough citizens; and carrying the right of inspection here urged to a point where respondent's other duties are interfered with seems to me to be something quite unlikely to happen. Neither is it at all likely that a granting of this application will result in a flood of similar applications by other taxpayers. Even if a few such applications should quickly follow, the need for them as well as the need for granting them, will cease as soon as the information sought becomes a part of the general information of the general public.

The petition herein contains intimations that petitioner's desire and intention are the preparation of memoranda and recommendations which he thinks may result in substantial reduction of the city budget — an aim which it is a little difficult to see can be helped by what is here sought. But the petitioner does not state that in such a way as to preclude a consideration of other objects, and the briefs and oral argument both make it plain that publicity of the qualifications of occupants of exempt positions is desired.

I think that a reasonable and proper object which may be productive of public good. The motion is accordingly granted. Settle order.